1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10   AXIS SURPLUS INSURANCE          CASE NO. C12-1024 MJP
     COMPANY,

11                                    ORDER DENYING IN PART AND
                     Plaintiff,       GRANTING IN PART MOTIONS
12                                    FOR SUMMARY JUDGMENT
            v.
13
     ST. PAUL FIRE & MARINE
14   INSURANCE COMPANY, a Connecticut
     company; HARTFORD ACCIDENT &
15   INDEMNITY COMPANY, a Connecticut
     company,
16
                     Defendants.
17

18
            THIS MATTER comes before the Court on four motions for summary judgment which
19
     together reach all remaining issues in this case. The Court considered all motions, briefing, and
20
     related documents, and orders as follows:
21

22          1.   Hartford's motion for summary judgment regarding reformation (Dkt. No. 79) is

23               DENIED;

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
1

1      2.  Hartford's motion for summary judgment on the duty to contribute to defense costs (Dkt.

2          No. 78) is DENIED;

3      3.  AXIS's motion for partial summary judgment regarding Hartford's primary duty to

4          defend (Dkt. No. 66) is DENIED as to the excess/primary nature of the AXIS and

5          Hartford policies in the event of reformation, but GRANTED as to Hartford's duty to

6          defend;

7      4.  Hartford's cross-motion for summary judgment (Dkt. No. 75) is DENIED as to the

8          excess/primary nature of the AXIS and Hartford policies in the event of reformation and

9          Hartford's duty to defend, but GRANTED that Hartford has no duty to indemnify

10         Clearwire absent reformation.

11

12                             **Background**

13        Plaintiff AXIS brought this suit seeking damages arising from Defendant Hartford and

14 Defendant St. Paul Fire & Marine Insurance Company's ("St. Paul") failure to contribute to the

15 defense of Clearwire Corporation ("Clearwire"), their alleged mutual insured. (Dkt. No. 1-1.) At

16 the time this case was filed, the underlying action was ongoing and AXIS was paying 100% of

17 Clearwire's defense costs. (Dkt. No. 51 at 2.) AXIS and St. Paul have since settled, and the

18 remaining claims are against Hartford. (Dkt. No. 46.) The underlying class action also reached a

19 settlement agreement. (Dkt. No. 51 at 1.) In their amended complaint, AXIS brought claims

20 against Hartford for (1) equitable contribution, (2) bad faith, and (3) reformation. (Dkt. No. 56 at

21 4-5.) Hartford moved to dismiss the bad faith claim. (Dkt. No. 66.) This Court dismissed the bad

22 faith claim, and the equitable contribution and reformation claims remain. (Dkt. No. 70.)

23

24

1      The background of the underlying lawsuit is relevant to the remaining issues in this case.

2  The underlying class action, <u>Kwan v. Clearwire</u>, WDWA No. 2:09-cv-01392-JLR, was initiated

3  in 2009 and alleged Clearwire made impermissible marketing calls between 2005 and 2009.

4  (Dkt. No. 66 at 2.)  The <u>Kwan</u> suit was brought against three Clearwire entities: Clearwire

5  Corporation, Clearwire US LLC, and Clearwire Communications LLC. (Dkt. No. 73 at 3.) The

6  class period in the underlying suit began August 31, 2005. (<u>Id</u>. at 3.)

7      In 2004, Craig McCaw purchased Clearwire Corporation and merged his holdings from

8  another entity, Flux Fixed Wireless, with Clearwire Holdings, the parent company of Clearwire

9  Technologies. (<u>Id</u>.) At the time of purchase, McCaw bought a controlling interest in Clearwire's

10  stock using his personal investment company, Eagle River Holding, LLC. (<u>Id</u>.) From November

11  1, 2004, to November 1, 2005, Hartford commercial general liability policy 52 UEN UM8005

12  ("Hartford policy") was in effect for Eagle River Holding. (<u>Id</u>. at 3, Dkt. No. 73 at 5.) At the

13  time, only Clearwire Corporation was in existence. (<u>Id</u>. at 5.)

14      The parties dispute whether the Hartford policy covered Clearwire as a named insured.

15  (Dkt. No. 66 at 3.) The remaining issues in the case are (1) whether the Hartford policy was

16  intended to cover Clearwire as a named insured such that the policy should be reformed, (2) if

17  Hartford must indemnify Clearwire, whether the Hartford policy is primary, (3) whether, absent

18  reformation, Hartford has a duty to indemnify Clearwire, and (4) whether Hartford has any

19  responsibility to contribute to the defense costs of the underlying class action.

20                                  **<u>Analysis</u>**

21  I.      <u>Standard for Summary Judgment</u>

22      Summary judgment is warranted if no material issue of fact exists for trial.  <u>Warren v. City of</u>

23  <u>Carlsbad</u>, 58 F.3d 439, 441 (9th Cir. 1995), <u>cert</u>. <u>denied</u>, 516 U.S. 1171 (1996).  The underlying

24

1    facts are viewed in the light most favorable to the party opposing the motion.  Matsushita Elec.

2    Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  "Summary judgment will not lie if .

3    . . the evidence is such that a reasonable jury could return a verdict for the nonmoving party."

4    Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  The party moving for summary

5    judgment has the burden to show initially the absence of a genuine issue concerning any material

6    fact.  Adickes v. S.H. Kress & Co., 398 U.S. 144, 159 (1970).  If the moving party makes this

7    showing, the burden shifts to the nonmoving party to establish the existence of an issue of fact

8    regarding an element essential to that party's case, and on which that party will bear the burden

9    of proof at trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

10    II.    Reformation Claim

11    Hartford moves for summary judgment on the issue of whether the Hartford policy should be

12    reformed to include Clearwire as a named insured. (Dkt. No. 79.) Hartford argues the Court

13    should require AXIS to show by a "clear and convincing standard" reformation is warranted, or

14    summary judgment should be entered in favor of Hartford. (Id. at 1.) The Court disagrees with

15    the standard urged by Hartford and finds summary judgment inappropriate on this issue.

16

17        a.    Standard

18    For summary judgment to be appropriate there must be no open question of material fact.

19    City of Carlsbad, 58 F.3d at 441.  The materiality of factual issues in a summary judgment

20    motion is determined by the substantive law involved. Anderson v. Liberty Lobby, Inc., 477 U.S.

21    242, 248 (1986). "[I]t is the substantive law's identification of which facts are critical and which

22    facts are irrelevant that governs." Id.  However, "[a]ny proof or evidentiary requirements

23    imposed by the substantive law are not germane to this inquiry, since materiality is only a

24    criterion for categorizing factual disputes in their relation to the legal elements of the claim and

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
4

1  not a criterion for evaluating the evidentiary underpinnings of those disputes." Id.  On weighing

2  evidence in a summary judgment motion, the Supreme Court held the standard mirrors the

3  standard for a directed verdict under Fed. R. Civ. P. 50(a), where "if reasonable minds could

4  differ as to the import of evidence… a verdict should not be directed." Id. at 250-51.

5      AXIS asks for reformation of the Hartford contract, alleging mutual mistake where both

6  parties intended Clearwire Corporation to be a named insured, but the contract did not reflect that

7  intention. (Dkt. No. 84 at 1.) The party asserting mutual mistake in a contract and asking for

8  reformation must show by "clear, cogent and convincing evidence" both parties to the contract

9  were mistaken when the contract was formed. N. Am. Specialty Ins. Co. v. Bjorn G. Olson

10 Bldg., Inc., 2009 U.S. Dist. LEXIS 60720, *16 (W.D. Wash.). "However, factual disputes

11 regarding the intent of the parties at formation should be left to the fact finder." (Id.) Where there

12 are significant questions of material fact concerning whether the endorsement reflected the

13 mutual intent of the parties when contracting, summary judgment is not appropriate. Davis v.

14 Liberty Mut. Group, 814 F. Supp. 2d 1111, 1117 (W.D. Wash. 2011). The evidentiary standard

15 of "clear, cogent and convincing" does not apply at the summary judgment stage. Instead the

16 standard is whether a reasonable jury could find Hartford and Clearwire had a mutual intent at

17 the time of contracting not reflected in the insurance contract. See, Anderson, 477 U.S. at 250-

18 51. Hartford must show there is no genuine issue of fact concerning Hartford and Clearwire's

19 intent not to include Clearwire as a named insured in the Hartford contract.

20          b.   Reformation and Issues of Fact

21      AXIS was granted leave to amend their complaint to include a reformation claim against

22 Hartford. (Dkt. No. 55 at 3.)  The Court granted leave to make this amendment on grounds that

23 in an insurance contract, an "unascertained third party" to the contract is entitled to invoke a

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
5

1   reformation claim. <u>Kolker Chem. Corp. v. Lumbermans Mut. Cas. Co.</u>, 81 N.J. Super. 556, 562

2   (1963).  This Court granted leave to bring the reformation claim on grounds that AXIS, in paying

3   defense costs for an allegedly mutual insured, was a successor in interest to the contract and an

4   unascertained third party. (Dkt. No. 55 at 3.)

5       AXIS alleges Hartford's policy was intended to cover Clearwire as a named insured, and

6   asks the Court to reform the policy to name Clearwire. (Dkt. No. 56 at 5.) Hartford asks for

7   summary judgment in their favor on this issue. (Dkt. 79 at 1.) Hartford agrees Eagle River was a

8   named insured, and argues Clearwire was covered only as a subsidiary of Eagle River. (<u>Id</u>. at 2.)

9   AXIS contends Craig McCaw, owner of Eagle River, was acquiring companies at a fast pace

10  during the time Clearwire was acquired by Eagle River, and Eagle River's insurance broker was

11  struggling to keep up with the insurance for the new companies. (Dkt. No. 84 at 3.) They argue

12  overwhelming evidence indicates Clearwire was intended to be a named insured under the

13  Hartford policy. (<u>Id</u>. at 1.)

14      Hartford points to communications between Hartford's underwriter and Eagle River's agent,

15  ABD Services ("ABD"), discussing the need for coverage based on sales, specifically including

16  Clearwire's sales. (Dkt. No. 79 at 4-6.) Hartford argues if AXIS and Hartford intended to cover

17  Clearwire as a named insured, it would have been mentioned in these conversations. (<u>Id</u>. at 6.)

18  Hartford further points to the Commercial General Liability Policy Checklist, where an ABD

19  representative indicated the listing of Eagle River was "accurate and complete" as the named

20  insured. (Dkt. No. 79 at 7-8.) Hartford also points to a document with a hand written annotation

21  indicating an unrelated party was removed from the list, arguing if Clearwire was intended to be

22  a named insured, it would have been similarly noted. (<u>Id</u>.)

23

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
6

1    AXIS contends the Court must look back to a 2003-2004 Hartford policy, 52UENUS7363,

2  which was amended to cover Clearwire after Mr. McCaw purchased it. (Dkt. No. 84 at 12.)

3  Hartford charged a premium for Clearwire and its subsidiary NexNet under this policy. (Id.)

4  AXIS produces a December 19, 2003 letter from ABD to Hartford requesting a quotation for the

5  addition of new exposures, including Clearwire, to Eagle River's 2003-2004 policy, an email

6  from January 2004 requesting Hartford officially bind Clearwire to Eagle River's policy, and a

7  copy of the Hartford-issued endorsement adding Clearwire to Eagle River's existing policy for

8  an increased premium. (Dkt. No. 9 at 226-49.)

9    Negotiations surrounding the 2004-2005 policy, the policy in effect during the class period of

10  the Kwan suit, are in dispute. AXIS submits a proposal created by ABD in November 2004

11  listing Clearwire under the "Named Insureds" and showing a premium of $58,067 for the

12  coverage. (Dkt. No. 85-1 at 11-12.) Prior to the start of the policy, ABD sent an email to

13  Hartford saying "in a separate email, we will forward a named insured list." (Dkt. No. 9 at 250.)

14  This list has not been produced by either party, and AXIS argues the list was the same as the one

15  in the ABD proposal. (Dkt. No. 84 at 12.) Hartford counters the ABD insurance proposal was

16  created after the policy was incepted, there is no indication it was ever sent out, and it dealt with

17  additional policies as well as the Hartford policy. (Dkt. No. 89 at 3.) AXIS also produces

18  Hartford's internal notes discussing coverage in the context of defending Clearwire in the Kwan

19  suit, where a Hartford employee wrote, "The issue of Clearwire being an insured was simply

20  addressed as a matter of caution. Our real reason for denying the claim is that there no coverage

21  [sic.] for the reasons stated." (Dkt. No. 85-1 at 47.)

22    Hartford asks the Court to issue summary judgment the Hartford insurance contract cannot

23  be reformed to include Clearwire as a named insured. (Dkt. No. 79 at 1.) Washington law holds

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
7

1  insurance contracts are subject to reformation like any other contract when there is a showing of

2  fraud or mutual mistake. Rocky Mt. Fire & Cas. Co. v. Rose, 62 Wn.2d 896, 902 (1963). There

3  is no allegation of fraud here, so the mutual mistake analysis applies. Mutual mistake applies

4  "[i]f the intention of the parties is identical at the time of the transaction, and the written

5  agreement does not express that intention[.]" Id., quoting Tenco, Inc. v. Manning, 59 Wn.2d

6  479, 483 (1962). The key material fact in a reformation claim is the intent of the parties when

7  contracting. See, e.g., Zehner v. Zehner, 2013 Wash. App. LEXIS 636, *7. The parties dispute

8  the mutual intent at the time of contracting, and neither party produces clear or dispositive

9  evidence Clearwire was or was not intended to be a named insured on the Hartford policy. At the

10 summary judgment stage, it is Hartford's obligation to show there is no issue of material fact and

11 no reasonable jury could find reformation appropriate. Anderson, 477 U.S. at 248. Hartford has

12 not met this burden and summary judgment is DENIED on the reformation claim.

13     III.     Hartford's Unnamed Subsidiary Clause and Duty to Indemnify Absent Reformation

14     The Hartford policy contains a subsidiary clause that excludes from coverage harm to

15 unnamed subsidiaries also covered by other insurance. (Dkt. No. 72 at 5.) Hartford claims the

16 subsidiary clause is the only avenue for coverage available to Clearwire Corporation, which at

17 the time of the Hartford policy was majority owned by Hartford's named insured Eagle River.

18 (Dkt. No. 73 at 5.) Coverage is not applicable under the subsidiary clause, Hartford argues,

19 because the underlying lawsuit alleges harm covered by AXIS, and the subsidiary clause

20 excludes coverage for injury or damage also covered by a separate policy. (Dkt. No. 73 at 9.)

21     AXIS contends the word "is" in the policy language means the subsidiary clause exclusion

22 for other insurance only applies to other insurance in effect at the time the Hartford plan was

23 active, not insurance purchased later that may ultimately cover the same harm. (Dkt. No. 66 at 8-

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
8

9.) Hartford rebuts, arguing the present tense "is" refers to the present tense of the reader

applying the clause to a claim. (Dkt. No. 73 at 10.) The question amounts to contract

interpretation.

"When construing the terms of an insurance policy, the court seeks to determine the intent of

the parties, and the general rules governing construction of contracts must be applied; and the

court will give the language its popular and ordinary meaning, unless it is apparent from a

reading of the whole instrument that a different or special meaning was intended or is necessary

to avoid an absurd or unreasonable result." Lawrence v. Nw. Cas. Co., 50 Wn.2d 282, 285

(1957). The subsidiary clause in Hartford's policy reads:

> 2. Each of the following is also an insured:
> ***
> e. Any subsidiary, and subsidiary thereof, of yours which is a legally incorporated entity of which you own a financial interest of more than 50% of the voting stock on the effective date of the Coverage Part.
>
> The insurance afforded herein for any subsidiary not named in this coverage part as a named insured does not apply to injury or damage with respect to which an insured under this Coverage Part is also an insured under another policy or would be an insured under such policy but for its termination or the exhaustion of its limits of insurance.

(Dkt. No. 27-6 at 35.) The Parties agree Clearwire is at minimum covered as a subsidiary under

the first part of the subsidiary clause, and only the second part providing an exception to

coverage is at issue.

Read plainly, the second part of the subsidiary clause exempts from coverage "injury or

damage" that is or would be, but for termination or exhaustion of limits, covered by other

insurance. The focus of the exemption is on the harm or injury, in this case the harm or injury

alleged in the Kwan action. The harm or injury alleged in the Kwan action is covered by AXIS,

and the subsidiary clause exemption applies to Clearwire in this case. Therefore, absent

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
9

1    reformation and separate from their duty to contribute to defense costs, Hartford has no

2    indemnification obligation to Clearwire. Summary judgment is GRANTED on this issue.

3           IV.     Hartford's Duty to Defend and AXIS's Ability to Collect Defense Costs

4           In their motion for partial summary judgment, AXIS argues Hartford had a duty to defend

5    Clearwire in the Kwan action such that Hartford must reimburse AXIS for defense costs

6    disproportionately incurred by AXIS. (Dkt. No. 66 at 2.) Hartford's duty to defend exists or does

7    not exist regardless of AXIS's involvement in this case, and must be addressed as an initial

8    matter. "An insurer is obligated to defend any complaint alleging facts that, if proved, would

9    render the insurer liable." Aetna Cas. & Sur. Co. v. M&S Indus., 64 Wn. App. 916, 927 (1992).

10   The pleadings must be liberally construed, and the duty hinges on whether the complaint alleges

11   any facts rendering the insurer liable to the insured under the policy language. Id. at 977-78.

12          The scope of an insurer's duty to defend is broader than the terms of the policy; the duty to

13   defend is particularly broad when an insurer elects to defend under a reservation of rights. Nat'l

14   Sur. Corp. v. Immunex Corp., 176 Wn.2d 872, 879 (2013).  When an insurer is uncertain of its

15   duty to defend, it may defend under a reservation of rights while seeking a declaratory judgment

16   that coverage does not exist.  Id. The Washington Supreme Court recently held in Nat'l Sur.

17   Corp. v. Immunex Corp. an insurer defending under a reservation of rights may not avoid or

18   require reimbursement of defense costs if a court ultimately declares no coverage exists. 176

19   Wn.2d at 885.

20          Hartford agreed to defend Clearwire in the Kwan suit under a reservation of rights in a letter

21   dated April 8, 2010. (Dkt. No. 9 at 265-68.) If a court were to declare Hartford has no coverage

22   obligation under the terms of their policy, Hartford would have no obligations for defense costs

23   going forward, but would still be responsible for defense costs leading up to the coverage

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
10

1   determination. <u>See</u>, <u>Immunex</u>, 176 Wn.2d at 885. Hartford argues in their Motion for Summary

2   Judgment on Hartford's Duty to Defend <u>Immunex</u> is distinguishable from this case because it

3   dealt with the rights and obligations between insured and insurer. (Dkt. No. 89 at 2.) This case is

4   instead between two insurers. In their original complaint, AXIS alleged a subrogation claim

5   against Hartford. (Dkt. No. 1-1.) In their amended complaint, AXIS dropped the subrogation

6   claim and alleged a claim for equitable indemnity/contribution. (Dkt. No. 56 at 4-5.) The

7   distinction is important, because a party making a subrogation claim stands in the shoes of the

8   insured, and is entitled to the rights and remedies belonging to the insured. <u>Mut. of Enumclaw</u>

9   <u>Ins. Co. v. USF Ins. Co</u>., 164 Wn.2d 411, 424 (2008). In an equitable contribution claim, an

10   insurer stands in its own shoes. <u>Id</u>. at 422-23. Hartford argues AXIS should not be able to benefit

11   from any communications about defending it had with the insured, but instead must prove the

12   fact of coverage based on the policy itself. (Dkt. No. 89 at 2.)

13      The Court disagrees. The Washington Supreme Court's decision in <u>Immunex</u> was based on a

14   dispute between an insured and insurer, and the important rights and obligations between

15   insureds and insurers were discussed in the decision, but they were not the only factors

16   considered. <u>Immunex</u>, 176 Wn. 2d at 885. <u>Immunex</u> expressed concern that allowing insurers to

17   insulate themselves from breach claims by defending under a reservation of rights while evading

18   any actual responsibility of defense costs creates an impermissible "all reward, no risk'

19   proposition [which] renders the <u>defense</u> portion of a reservation of rights defense illusory." <u>Id</u>.

20   (<u>emphasis original</u>). The <u>Immunex</u> Court emphasized its decision "does not leave insurers

21   without options to protect their interests. An insurer is not forced to undertake a defense if it

22   believes the claims asserted against the insured are not covered," but when an insurer chooses to

23   defend under a reservation of rights, it cannot "claim the benefits of doing so and simultaneously

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
11

1    avoid the costs." Id. at 887.  Hartford does not dispute it agreed to defend Clearwire under a

2    reservation of rights. (Dkt. No. 89 at 9.) It is consistent with the policy considerations discussed

3    in Immunex to hold Hartford to their agreement to defend.

4         Further, Washington law is clear that "[i]n the context of insurance law, contribution allows

5    an insurer to recover from another insurer where both are independently obligated to indemnify

6    or defend the same loss." Mut. of Enumclaw., 164 Wn.2d at 419.  With Immunex in mind, it is

7    clear Hartford had an independent obligation to defend the loss stemming from the Kwan action

8    due to their agreement to defend under a reservation of rights. It is consistent with Washington

9    insurance law for AXIS to make a claim in equitable contribution for the defense funds.

10   Summary judgment is GRANTED that Hartford had a duty to defend Clearwire in the Kwan

11   action and AXIS has an equitable contribution claim for the defense funds.

12        V.     Excess and Primary Relationship of AXIS and Hartford

13        The issue of whether Hartford has a primary duty to defend only arises if the Hartford policy

14   is reformed to include Clearwire as a named insured, because the exception to the subsidiary

15   clause precludes that avenue of coverage, as discussed above. AXIS alleges Hartford's policy is

16   primary to theirs based on their superior excess insurance clause.

17        Washington law allows excess insurance provisions, and when two policies cover the same

18   risk but one contains an excess insurance clause and the other contains a pro rata clause, the

19   latter policy provides primary coverage. Progressive Cas. Ins. Co. v. Cameron, 45 Wn. App. 272,

20   281 (1986). The AXIS insurance policy includes an excess insurance provision stating "[t]he

21   insurance afforded by this Policy is excess over any other valid and collectible insurance

22   available to the Insured, except insurance specifically arranged by the Named Insured to apply in

23   excess of this insurance." (Dkt. No. 67 at 51.)

24

1   For the excess insurance clause to apply, the other insurance must be "valid and collectible"

2   by the AXIS policy's own terms.  Washington law holds, where the term "collectible" modifies

3   the term "insurance" in an excess insurance provision, an excess carrier's coverage will not drop

4   down unless the limits of the primary insurer's policy limits are reached, even if the primary

5   insurer is insolvent and funds are not actually collectible by the insured. Fed. Ins. Co. v. Pac.

6   Sheet Metal, 54 Wn. App. 514, 520-21 (1989).  A Washington Appeals Court in Polygon Nw.

7   Co. v. Am. Nat'l Fire Ins. Co. took this reasoning farther, holding an excess insurer's duty to pay

8   was triggered even when a primary insurer did not actually pay, but the obligation was reduced

9   by  the amount the primary insurer was obligated to pay. 143 Wn. App. 753, 787 (2008). Unlike

10   these Washington cases discussing what is and is not collectible insurance, here the insurer

11   alleged to be primary does not, in the absence of reformation, provide coverage to the underlying

12   claims due to their unnamed subsidiary clause. Where no coverage is afforded under a policy, the

13   policy does not constitute "valid and collectible" insurance available to the insureds, and the

14   excess insurance clause does not apply. See, e.g., Gemini Ins. Co. v. Kukui'ula Dev. Co. (Haw.),

15   LLC, 855 F. Supp. 2d 1125, 1134 (Dist. Haw. 2012).

16   If the Hartford policy is reformed to include AXIS as the named insured, the AXIS excess

17   insurance clause may apply, and Hartford's coverage may be excess to AXIS's coverage.

18   However, if the policy is not reformed, the Hartford subsidiary clause applies and Harford's

19   insurance is not "valid and collectible" other insurance within the meaning of AXIS's excess

20   insurance provision. The determination of excess coverage should not be made before the

21   determination of the reformation claim. Summary judgment is DENIED as to the issue of the

22   excess insurance clause.

23

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
13

1

## Conclusion

2

The Court will not issue summary judgment as to (1) whether the Hartford policy was

3

intended to cover Clearwire as a named insured such that the policy should be reformed, or (2) if

4

the Hartford policy is reformed, whether the Hartford policy is primary. Summary judgment on

5

these issues is DENIED because they involve open questions of material fact. Summary

6

judgment is GRANTED that (3) absent reformation, Hartford has no duty to indemnify

7

Clearwire, and that (4) Hartford is obligated to contribute to the defense costs of the underlying

8

class action, regardless of reformation, because they agreed to defend under a reservation of

9

rights.

10

For clarity, the Court Orders as follows:

11

12

5.   Hartford's motion for summary judgment regarding reformation (Dkt. No. 79) is

DENIED;

13

14

6.   Hartford's motion for summary judgment on the duty to contribute to defense costs (Dkt.

No. 78) is DENIED;

15

16

7.   AXIS's motion for partial summary judgment regarding Hartford's primary duty to

17

defend (Dkt. No. 66) is DENIED as to the excess/primary nature of the AXIS and

18

Hartford policies in the event of reformation, but GRANTED as to Hartford's duty to

19

defend;

20

8.   Hartford's cross-motion for summary judgment (Dkt. No. 75) is DENIED as to the

21

excess/primary nature of the AXIS and Hartford policies in the event of reformation and

22

Hartford's duty to defend, but GRANTED that Hartford has no duty to indemnify

23

Clearwire absent reformation.

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
14

1    The clerk is ordered to provide copies of this order to all counsel.

2    Dated this 24th day of May, 2013.

3

4

5    _____
     Marsha J. Pechman
6    Chief United States District Judge

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER DENYING IN PART AND GRANTING IN
PART MOTIONS FOR SUMMARY JUDGMENT-
15