UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AXIS SURPLUS INSURANCE
COMPANY,

                Plaintiff,

     v.

HARTFORD ACCIDENT &
INDEMNITY COMPANY,

                Defendant.

CASE NO. C12-1024 MJP

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

This matter came on regularly for trial on October 7, 8 and 9, 2014, before the Honorable

Marsha Pechman, United States District Court Chief Judge, sitting without a jury.  Plaintiff

AXIS Surplus Insurance Company ("AXIS") was represented by David M. Schoeggl and

Stephania Camp Denton of Mills Meyers Swartling.  The defendant Hartford Accident and

Indemnity Company ("Hartford") was represented by Daniel L. Syhre and Kathryn Naegeli

Boling of Betts Patterson & Mines. A motion for judgment as a matter of law or judgment on

partial findings was brought by Hartford at the close of Plaintiff's case. (Dkt. No. 139.) The

Court declines to rule on this motion in accordance with Fed. R. Civ. P. 52(c). The Court, having

1    considered all evidence before it, including the testimony of witnesses and the documents and

2    exhibits which were admitted by the Court, having heard argument and considered the briefs and

3    memoranda of counsel, and having reviewed the facts and records of this action, makes the

4    following findings and conclusions:

5    **I.       FINDINGS OF FACT**

6                                    **Procedural Context**

7           1.   This case was removed from King County Superior Court on June 11, 2012. (Dkt. No. 1.)

8           2.   This case stems from an underlying class action, <u>Kwan v. Clearwire Corporation et al.</u>,

9    2:09-cv-01392-JLR (W.D. Wash.) At the time the case was filed, <u>Kwan</u> was ongoing. A

10   settlement order and final judgment was issued in <u>Kwan</u> on May 7, 2013. (<u>Id.</u> at Dkt. No. 200.)

11          3.   On May 24, 2013, the Court entered an order on summary judgment narrowing the issues

12   in this case to be presented at trial. The Court ruled that absent reformation of the Hartford

13   policy, Hartford had no duty to indemnify Clearwire. (Dkt. No. 103 at 14.) The issues of whether

14   reformation is appropriate and if so, what Hartford's indemnity obligation would be were

15   reserved for trial. (<u>Id.</u>) The Court also issued summary judgment that Hartford had a duty to

16   defend Clearwire because it agreed to do so under a reservation of rights. (<u>Id.</u>) The issue of how

17   to apportion defense costs was not addressed and was therefore reserved for trial.

18          4.   On June 16, 2013 AXIS filed an amended complaint adding a claim for indemnity based

19   on the funds paid in the underlying class action settlement. (Dkt. No. 112.) Hartford filed an

20   answer and counterclaim, seeking reimbursement of the $300,000 it paid towards the underlying

21   class action settlement. (Dkt. No. 118.)

22

23

24

**Background Facts**

5.   Plaintiff AXIS Surplus Insurance Company ("AXIS") is a Georgia insurer.  AXIS issued a claims-made technology errors & omissions insurance policy to Clearwire Corporation and related companies under policy number ECN000006650801 (herein referenced as the "AXIS Policy"), covering claims first made during the policy period 11/1/08 to 11/1/09. The AXIS Policy includes a duty to defend and provides limits of $10 million inclusive of defense costs.

6.   Hartford issued a commercial general liability insurance policy under policy number 52UENUM8005 (herein referenced as the "Hartford Policy").  The Hartford Policy names Eagle River, Inc. and several other companies owned by or connected with Craig McCaw as named insureds.  The Hartford policy does not name Clearwire Corporation as a named insured.  The Hartford policy covers bodily injury, property damage and personal injury for the policy period 11/1/04 to 11/1/05, and includes a duty to defend.  In addition to defense costs, the Hartford policy provides separate limits of $1 million for bodily injury/property damage and $1 million for personal injury.

7.   On August 31, 2009, Rosa Kwan filed suit against three "Clearwire" entities: Clearwire Corporation, Clearwire US LLC, and Clearwire Communications, LLC.  (Plf. Exh. 3 (Kwan Complaint).)  Ms. Kwan claimed she received automated calls to her cell phone in 2009 from the Clearwire entities or their agents.  (Id. at 2.)  She sought to represent a class of similarly situated persons (those receiving auto-dialed calls) for the period going back four years from the date of filing and forward to the time of trial.  (Id. at 4-5.)

8.   Clearwire tendered the Kwan suit to Axis, Hartford, St. Paul and Zurich.  Each of these insurers ultimately agreed to defend Clearwire under a reservation of rights.

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 3

9.   Clearwire, AXIS, Hartford, St. Paul, Zurich and Chartis contributed a combined $5,975,000.00 pursuant to a funding agreement. These funds were paid by or on behalf of Clearwire to fund the settlement.  The funding was distributed as follows:

| | |
|---|---|
| Axis | $  4,000,000.00 |
| Clearwire | $     650,000.00 |
| Hartford | $     300,000.00 |
| St. Paul / Chartis / Zurich | $   1,125,000.00 |
| Total | $  5,975,000.00 |

10. Under the terms the of the settlement agreement, all parties released each other for all claims except that AXIS and Hartford did not release one another.

11. The release given by Clearwire extended beyond the *Kwan* lawsuit to several other similar lawsuits alleging unlawful automated dialing practices:  Cunningham v. Clear Wireless, LLC, Cudecki v. Clearwire Corporation, and Anderson v. Clearwire Corporation.  Clearwire did not tender any of the above lawsuits to Hartford and none of the above lawsuits allege potential liability during Hartford's policy period.  AXIS participated in each of the above lawsuits on the ground that they involve the same Wrongful Acts as the Kwan lawsuit.

12. By the time settlement was achieved the defense costs totaled $1,099,651.02. Of this amount $38,500.23 is attributable to bills related to companion lawsuits never tendered to Hartford.

**Status of Clearwire on the Hartford Policy**

13. Clearwire Corporation and Hartford's first named insured, Eagle River Inc., were at all relevant times clients of ABD Insurance with respect to procurement of insurance coverage. ABD was the agent of both Clearwire Corporation and Eagle River, Inc.

1 14. The Hartford policy names only the following named insureds: Eagle River Inc., Com

2 Investments LLC, and KCJC LLC.

3 15. The Hartford policy insures subsidiaries of the named insured under the following

4 provisions:

5  SECTION II WHO IS AN INSURED

6      *..*..*

7   2.  Each of the following is also an insured:

8      *..*..*

9   **e.**  Any subsidiary, and subsidiary thereof, of yours which is a

10     legally incorporated entity of which you own a financial interest

11     of more than 50% of the voting stock on the effective date of the

12     Coverage Part.

13 16. During negotiations for the underwriting process for the Hartford policy, there is no

14 evidence ABD told Hartford that Clearwire Corporation was to be a named insured on the

15 Hartford policy.

16 17. The application for the Hartford policy listed only Eagle River, Inc. as a named insured

17 and did not mention any other named insureds.

18 18. An e-mail from ABD mentions a list of named insureds that would be later forwarded but

19 there is no evidence that any new list of named insureds was communicated or sent to Hartford

20 for the 2004-2005 policy period.

21 19. After receiving the Hartford policy, Eagle River's broker filled out a checklist designed

22 to protect against mistakes, and the broker checked off the Hartford policy's named insured list

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 5

1  as correct.  The checklist supports the inference that the named insured list was either not a

2  mistake or, if it was a mistake ABD ratified or knowingly accepted the policy in its current form.

3      20. There is no evidence Hartford and its first named insured, Eagle River, agreed to make

4  Clearwire Corporation a named insured on the Hartford policy.

5      21. There is evidence that the parties intended to insure Clearwire Corporation. The evidence

6  includes the policy schedule and the fact they collected a premium for Clearwire, but this

7  evidence does not distinguish between whether Clearwire would be insured as a named insured

8  or a subsidiary.

9      22. AXIS points to insurance "proposals" prepared by ABD showing Clearwire on a general

10  list of named insureds and pertaining to several different policies.  The purpose of these

11  proposals was to provide an overview of coverage to the McCaw cluster of companies.   There is

12  no evidence they were given to Hartford.

13      23. Evidence that Clearwire or closely related entities were named on technology, directors

14  and officers and worker's compensation policies is not probative of the parties' intent with

15  respect to the Hartford policy at issue.  Workers compensation policies, for example, only insure

16  the employers specifically named on the policy.  Thus, unlike in the case of the Hartford CGL

17  policy, all insureds must be specifically named.

18                    **Duty to Defend and Apportionment of Defense Costs**

19      24. When the <u>Kwan</u> suit was tendered to Hartford, Hartford agreed to defend under a

20  reservation of rights. This agreement obligated Hartford to contribute to defense costs. (Dkt. No.

21  103.)

22      25. The Kwan suit was also tendered to three other insurance companies that agreed to

23  defend under a reservation of rights: AXIS, Zurich and St.Paul.

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 6

## II.    CONCLUSIONS OF LAW

1.    This Court has jurisdiction under 28 U.S.C. § 1332.  Venue is proper under 28 U.S.C. § 1391.

2.    AXIS's claim for reformation requires it to prove by clear, cogent and convincing evidence that (1) ABD and Hartford intended to make Clearwire a named insured on the Hartford policy and (2) both parties mistakenly believed the writing in the policy reflected that intent.  A mistake in contract law "is a belief that is not in accord with the facts."  Restatement (Second) of Contracts § 151; <u>CPL, L.L.C. v. Conley</u>, 110 Wn. App. 786, 791 (2002).

3.    Mutual mistake will support reformation of a contract where the contracting parties had identical intentions, but the writing materially varies from that intent.  <u>Denny's Rests., Inc. v. Sec. Union Title Ins. Co.</u>, 71 Wn. App. 194, 212 (1993).  "The mistake must be proved by clear, cogent and convincing evidence, and if doubts exist as to the parties' intent, reformation is not appropriate." <u>Id.</u>

4.    There is no clear, cogent, and convincing evidence supporting either element of AXIS's reformation claim.  There is no evidence showing that ABD and Hartford had an agreement to name Clearwire Corporation as a named insured on the Hartford policy.  At best, there is evidence some employees of ABD desired this outcome but did not express that intention to Hartford.

5.    There is no evidence of unilateral mistake coupled with inequitable conduct. A party to a contract may be entitled to reformation where there was unilateral mistake coupled with fraud or inequitable conduct of the other party. Washington Mut. Sav. Bank v. Hedreen, 125 Wn. 2d 521, 526 (1994). There is no evidence Hartford engaged in fraud or inequitable conduct. The fact Hartford collected an additional premium for the exposure associated with Clearwire is not

1  inconsistent with a good faith belief Clearwire was covered as a subsidiary under the Hartford

2  policy.

3       6.   This Court already held AXIS has no indemnity claim in the absence of reformation.

4  (Dkt. No. 103 at 14.) Because reformation is not appropriate, the issue of indemnity need not be

5  addressed.

6       7.   This Court also already held Hartford had a duty to defend Clearwire in the <u>Kwan</u> action

7  because it agreed to do so under a reservation of rights. (<u>Id</u>.)

8       8.   The total defense costs were $1,099,651.02. Of this amount, $38,500.23is directly

9  attributable to claims other than Kwan, which were never tendered to Hartford. This amount is

10  subtracted from the total defense costs, leaving $1,061,150.79.

11      9.   Because Hartford's duty to defend stems from its promise to defend and not an actual

12  coverage obligation, the most equitable way to apportion defense costs is to divide by the total

13  number of insurers who agreed to defend. In this case, four insurers agreed to defend, and

14  Hartford is obligated to pay 25% of $1,061,150.79 for a total defense cost of $265,287.70.

15      10. Hartford must pay AXIS $265,287.70 in defense costs.

16      11. Defense costs and indemnity costs are distinct. The <u>Kwan</u> settlement amounts to

17  indemnity costs. By contributing to the settlement fund, insurers obtained many releases and

18  benefits. Hartford's counterclaim for the $300,000 they paid towards the <u>Kwan</u> settlement is

19  denied. These funds were not indemnity costs improperly paid, but part of a bargain from which

20  Hartford benefited. These funds will not be used to off-set the defense costs owed by Hartford to

21  AXIS.

22      12. Judgment shall issue in favor of AXIS as the prevailing party.

23

24

1    The clerk is ordered to provide copies of this order to all counsel.

2

3    Dated this 17th day of October, 2013.

4

5

6    Marsha J. Pechman
     Chief United States District Judge
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

FINDINGS OF FACT AND CONCLUSIONS OF
LAW- 9